IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

                                    :

VANCE BYRD
                                    :

    v.                              :   Civil Action No. DKC 19-1873

                                    :

TA CHEN INTERNATIONAL, et al.
                                    :

### MEMORANDUM OPINION

Presently pending in this Title VII race discrimination and retaliation case are (1) the motion to dismiss filed by Defendants Ta Chen International, Inc., Asher Wolf, Johnny Hsieh and Bill Gall, (ECF No. 13), (2) the motion for clerk's entry of default filed by Plaintiff Vance Byrd, (ECF No. 17), and (3) two separate motions to amend filed by Plaintiff Vance Byrd (ECF Nos. 18, 22). The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, Defendants' motion to dismiss will be granted in part and denied in part, the motion of default will be dismissed, and the motions to amend will be treated as motions to supplement and will be granted.

## I.  Background

Unless otherwise noted, the following facts are either set forth in the complaint, evidenced by documents referenced and attached to the complaint, or are matters of public record of which the court may take judicial notice.

Plaintiff, who has filed his complaint pro se, has included a series of allegations regarding Defendants.  These charges in some cases repeat, but mostly expand on, allegations that Mr. Byrd made in a charge of discrimination (ECF No. 13-2) that he filed with the United States Equal Employment Opportunity Commission ("EEOC") on March 18, 2019.  They also allege retaliatory actions taken by Mr. Byrd's employer and Mr. Wolf as his supervisor in response to his allegations against them. The original EEOC complaint pertained exclusively to nonparty Empire Resources, Inc. ("ERI"), Mr. Byrd's employer. (*Id*.). On April 4, 2019, the EEOC provided Mr. Byrd with a Right to Sue Letter. (ECF No. 1-3).  This letter also pertained to ERI, and not any of the named Defendants.

In the charge of discrimination, Mr. Byrd alleged that he confronted his supervisor, Asher Wolf, about why a white employee was given a key to the building in which they worked, while African American employees were not given a key.  Mr. Wolf allegedly responded that "he didn't care." (*Id*.).  In the complaint, Mr. Byrd expands on the encounter, saying that Mr. Wolf's comment that "he didn't care" was in response to Mr. Byrd telling Mr. Wolf that the disparity in key privileges "looks like being racist[,]" and that Mr. Wolf walked out on Mr. Byrd after this brief encounter. (ECF No. 1-1, at 6).  Mr. Byrd's complaint also attaches a list that catalogues a series of behaviors by Mr. Wolf alleged to be discriminatory or retaliatory in nature including allowing a white

2

co-worker without a commercial driver's license ("CDL") to drive the yard truck, while not allowing an African American co-worker with a CDL to do so.

Plaintiff also alleges subsequent retaliation after initially filing his EEOC complaint on March 18 (ECF, No. 13-2), which includes Mr. Wolfe's questioning Mr. Byrd about his EEOC complaint and its motivations, threatening to fire him for "insubordination," docking of his overtime (ECF, No. 1-4, at 1-2),[1] and, as alleged in his first supplemental pleading,[2] threatening to fire anyone taking part in the EEOC investigation. (ECF. No. 5, at 1). In a subsequent supplement to his complaint,[3] Mr. Byrd also produces texts that he suggests show Mr. Wolf, acting in concert with his employer, attempting to use Mr. Byrd's lack of

---

[1] The docking of his overtime could constitute either discrimination or retaliation. This conduct allegedly took place on April 3, only weeks after filing his initial EEOC complaint, (ECF No. 13-2), and Plaintiff expressly attributes it to retaliation (ECF No. 1-4, at 2). As such, it will be treated solely as a retaliation claim.

[2] This instance of retaliation is alleged to have occurred at 11:55 AM on June 25, the very day his complaint was first filed in this court. (ECF No. 1). However, closer inspection of the cover sheet to his filings show that Mr. Byrd filled out and signed the complaint on June 24. (ECF No. 1-1). Therefore, this allegation is properly considered a supplement to his initial complaint. *See* Fed.R.Civ.P. 15(d).

[3] Although styled as a motion for amendment, the messages from Mr. Wolf included as evidence of these allegations were alleged to have been sent on July 3, *after* his initial filing with this court on June 25 and thus are treated as supplemental pleadings. *See* Fed.R.Civ.P. 15(d).

3

an attorney to the employer's advantage in persuading Mr. Byrd not
to bring his EEOC claims.  (ECF, No. 18-1).  In his final supplement
to the complaint against Ta Chen,[4] he alleges that "Ta Chen In.
(Empire Resources)" threatened to, and ultimately did, terminate
his employment "for not signing a document" involving the pending
litigation.  (ECF, No. 22, at 3).  He argues this retaliation
continued even after his termination in their threatening to call
the police should he return on site, which he asserts is against
company policy.  (*Id*. at 2; ECF, No 22-1 at 2).

On July 15, 2019, summonses were issued to defendants Bill
Gall, Johnny Hsieh and Asher Wolf, but not to defendant Ta Chen.
(ECF No. 4).  On September 24, 2019, Plaintiff was directed to
submit a completed summons for Defendant Ta Chen International and
the date by which Plaintiff must serve Defendant was extended.
(ECF No. 10).  On September 24, 2019, returns of service were filed
regarding Bill Gall, Johnny Hsieh and Asher Wolf, but it appears
that Ta Chen was never properly served.  (ECF No. 12).

Nevertheless, on October 31, 2019, Defendants, including Ta
Chen, filed their motion to dismiss.  (ECF No. 13).  On November
15, Plaintiff responded in opposition.  (ECF No. 15).  On December
23, Mr. Byrd filed a motion for clerk's entry of default
specifically against Ta Chen International ("Ta Chen"), despite

---

[4] This, too, is styled as a motion for amendment, but, as it
pertains to retaliation, only involves conduct occurring in
November and December of 2019, well after June 25.

the filing of the motion to dismiss nearly two months prior. (ECF No. 17). On the same day, Mr. Byrd filed his penultimate supplement. (ECF No. 18). On January 2, 2020, Ta Chen opposed Plaintiff's motion for default. (ECF No. 20). On June 19, 2020, Plaintiff filed his final supplement. (ECF No. 22). Defendants opposed this motion. (ECF No. 23).

## II.  Standard of Review

Although styled as a Fed.R.Civ.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, Defendants' arguments concerning exhaustion of administrative remedies and failure to allege retaliation within the EEOC complaint are more properly claims that Plaintiff failed to allege the "essential ingredients of a federal claim of relief" and thus do not challenge subject matter jurisdiction.[5]  In that both parties rely on facts put forth in the complaint or material referenced by the complaint, these two claims, like the claim that Plaintiff fails to allege sufficient facts to support his claims, are reviewed under Fed.R.Civ.P. 12(b)(6).[6]

---

[5] *See Johnson v. Maryland Dep't of Labor, Licensing, and Reg.*, 386 F.Supp.3d 608, 613 n.1, (D.Md. 2019); *see also Fort Bend Cty., Tx. V. Davis*, 139 S.Ct. 1843, 1846 (2019) (abrogating *Jones v. Giant of Md., LLC.*, 551 F.3d 297, 3000 (4th Cir. 2009), insofar as Title VII's "charge-filing instruction is not jurisdictional.")

[6] *See CoStar Realty Info., Inc.*, 604 F.Supp. 2d 757, 767 (D.Md. 2009) (reviewing a defendant's claim  that she was not a proper party under Fed.R.Civ.P. 12(b)(6)); *see also Johnson*, 386 F.Supp.3d 608 at 613 (analyzing a claim of failure to exhaust administrative review under the FEPA and Title I of the ADA under

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Fed.R.Civ.P. 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n. 3 (2007). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

---

Fed.R.Civ.P. 56(a) as the both parties relied on material outside the complaint).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).   Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III. Motion to Dismiss

Defendants assert three bases for dismissal.  First, they argue that they were not named in the EEO complaint and that only the named party in the EEO complaint, ERI, can be sued.  Second, they argue that retaliation was not alleged in the EEO complaint and can't be asserted here as a result.  And third, they argue that Plaintiff has failed to state a claim for discrimination or retaliation.

### A.    Prerequisites to Suit

### 1.    Proper Party Before the Court

A charge before the EEOC is required to be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b).  These requirements ensure that the employer is put on notice of its employee's claims and is afforded an opportunity to resolve them out of court.  *Miles v. Dell*, Inc., 429 F.3d 480, 491 (4th Cir.

7

2005).   Ordinarily, suit under Title VII may be brought "only 'against the respondent named in the [administrative] charge.'" *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 458 (4th Cir. 1988) (quoting 42 U.S.C. § 2000e-5(f)(1)).   But, "[t]his [naming] requirement is not applied in a hyper-technical fashion...." *Raiford v. Md. Dep't of Juv. Servs.*, No. 12-3795, 2014 WL 4269076, at *6 (D.Md. Aug. 28, 2014) (quoting *Kronk v. Carroll Cty., Md.*, No. 11-0277, 2012 WL 245059, at *5 (D.Md. Jan. 25, 2012)).   Indeed, the court is mindful that generally "laypersons, rather than lawyers," are the ones who "initiate" the remedial process. *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (quoting *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 124 (1988)).   To this point, the Supreme Court has noted that, "[d]ocuments filed by an employee with the EEOC should be construed . . . to protect the employee's right and statutory remedies." *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 594 (4th 2012) (citing *Fed Express Corp. v. Holowecki*, 552 U.S. 389, 406 (2008)).   The Fourth Circuit has taken this mandate to mean "'EEOC charges must be construed with utmost liberality,'" and under some "circumstances . . . the naming requirement is not strictly enforced." *Marshall v. Anne Arundel Cty., Md.*, No. ELH-18-74, 2019 WL 568676, at *10 (D. Md. Feb. 12, 2019 (quoting *Alvarado*, 848 F.2d at 460-61)).

Defendants' first ground for dismissal is that Plaintiff's Charge of Discrimination and Right to Sue letter pertain only to nonparty ERI.  (ECF No. 13-1, at 1).  Plaintiff contends, in his response to the motion to dismiss, that this was in error.  Mr. Byrd contends that he filed his discrimination charge on the "EEOC portal" on March 13, 2019, and that he physically went to an EEOC office six days later.  On March 19, as Mr. Byrd puts it:

> I was not comfortable talking to a white Caucasian about my case.  EEOC was told I work for Ta Chen International at empire resources location.  I couldn't see what she was in putting the system she left me for 30 minutes in the room, she never let me see what I was signing.

(ECF No. 15, at 1).  Mr. Byrd further alleges that there was an error in the discrimination charge regarding his start date. (*Id*.).  While Mr. Byrd writes that "EEOC was told I work for Ta Chen International at empire resources location," when discussing the error in his start date, he says that he "started at empire resources on 8/1/2014[.]" (*Id*.).  In one of Mr. Byrd's motions to amend, however, he refers to defendant Ta Chen as "Ta Chen In. (Empire Resources)".  (ECF No. 22, at 1).

There is, apparently, a corporate relationship between ERI and Ta Chen, although the record does not demonstrate it precisely. Ta Chen has not filed the corporate disclosure normally provided pursuant to Local Rule 103.3.  Nevertheless, publicly available information indicates that, on May 8, 2017, Ta Chen Stainless Pipe

Co., Ltd. acquired Empire Resources, Inc., *see MSK Client Ta Chen Acquires Empire Resources*, MSK.com (May 11, 2017), https://www.msk.com/newsroom-headlines-224, and Ta Chen International Inc. is its wholly owned subsidiary, *see* Lauly Li, *Ta Chen to Buy Empire in US Expansion*, Tapei Times (April 4, 2017). https://www.taipeitimes.com/News/biz/archives\/2017/04/04/200366 8006.

Defendants here seize on a possible error in the EEO complaint, or in naming Ta Chen in this case, that they argue acts as a total bar to his claims when there is little to no dispute as to central conduct at issue here or to the fact that Mr. Byrd brings these claims against his employer, and Mr. Wolf as his supervisor and their employee. In his initial complaint to EEOC, Mr. Byrd clearly identifies ERI as his employer. (ECF No. 13-2). Moreover, even despite his possible mistake in naming Ta Chen as Defendant in his claim to this court, his complaint again identifies ERI as his employer. (ECF No. 1, at 3). Further, Mr. Byrd identifies Mr. Wolf repeatedly as his general manager ("GM") in his attachment to the complaint. (ECF No. 1-4, at 1-2). The communications attached to and referenced in the complaint sufficiently allege Mr. Wolf's involvement in the alleged wrongful termination and other retaliatory conduct. The text messages alleged to be from Asher Wolf to Mr. Byrd indicate Mr. Wolf's knowledge of the EEOC charge, as he notes that "[t]he situation is

being reviewed by the corporate human resources department." (ECF No. 18-1 at 1). The motion alleges that "Mr. Wolf knew I did not trust him N [sic] Ta Chen," that he was "texted and emailed not to [come] back to work" and that his firing was attributable to "Ta Chen retaliation" (ECF No. 18). While the text messages themselves do not mention Ta Chen or ERI, in an attachment to another motion, Mr. Byrd includes e-mails with Mr. Wolf, which note that his e-mail address is "AWolf@EmpireResources.com." (ECF No. 22-1, at 1). Mr. Wolf's name also appears in the charge which Mr. Byrd filed with the EEOC. (ECF No. 13-2). The e-mails Mr. Byrd attaches include messages from the Human Resources department of ERI to Mr. Byrd informing him that he has been terminated as an employee and noting "that he has a lawsuit pending against the Company." (ECF No. 22-1). These materials also include an "Empire Resources, Inc. Employee Handbook," among other records, which reinforce that Mr. Byrd was an employee of ERI, not Ta Chen. (ECF No. 22-1, at 7). These communications also make clear that Mr. Wolf worked for ERI, had direct supervision over Mr. Byrd, and was instrumental in his eventual termination and its subsequent handling at the direction of ERI. (ECF No. 22-1, at 1-2).

Given the uncertainty about the proper name of Plaintiff's corporate employer, dismissal is at least premature, and may be inappropriate. Under Fed.R.Civ.P. 15(c)(1)(c), an amendment

changing the party or the naming of a party can relate back to the date of the original pleading if:

> Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

*Marshall*, No. CV ELH-18-74, 2019 WL 568676, at *13 (citing Fed.R.Civ.P. 15(c)(1)(B),(C)).  Mr. Wolf was aware of Mr. Byrd's complaint and such knowledge, as general manager, would have put ERI on notice of the discrimination charges as well, as would its inclusion in the original EEOC complaint.  Mr. Wolf's inclusion as a Defendant would have also put him, and by extension ERI, on notice of the retaliation charges appearing for the first time in Mr. Byrd's initial complaint to this court and in his amendments, as would Mr. Wolf's central role in perpetrating these alleged forms of retaliation.  Even without actual knowledge, moreover, their inclusion in the original EEOC complaint and Mr. Wolf's subsequent actions as GM meant they should have known that federal charges were forthcoming but for a mistake in identity. ERI would suffer no prejudice in its inclusion.

If, alternatively, Ta Chen is the proper party to be named as the corporate employer, dismissal would not be required.  To determine whether a civil action can be brought against a defendant

not named as a Respondent in the EEOC charge, courts in the United States Court of Appeals for the Fourth Circuit often rely on the "substantial identity test." *Marshall*, No. CV ELH-18-74, 2019 WL 568676, at *11 (D.Md. Feb. 12, 2019) (citing *Elzey v. Wal-Mart Assocs., Inc.*, RDB-11-2151, 2012 WL 3715321, at *3 (D.Md. Aug. 28, 2012). Pursuant to the substantial identity test, courts address the following factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
>
> 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;
>
> 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; [and]
>
> 4) whether the unnamed party had in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Vanguard Just. Soc. Inc. v. Hughes*, 471 F.Supp. 670, 687 (D.Md. 1979). "Of these four factors, the second and third are the most important as they are most reflective of the two-fold purpose of the naming requirement." *Crosten v. Kamauf*, 932 F.Supp. 676, 682 (D.Md. 1996) (citing *Mayo v. Questech, Inc.*, 727 F.Supp. 1007, 1011 (E.D.Va. 1989)).

The substantial identity test cautions against dismissing Mr.
Byrd's claim against Ta Chen until its full relationship to ERI is
understood.   The first factor of the substantial identity test
weighs in Mr. Byrd's favor as the exact role of Ta Chen and ERI
could not have been readily ascertained by him at the time of
filing.   The second factor, likewise, might favor Plaintiff if
there is a clear corporate affiliation between ERI and Ta Chen.
The third factor cuts against dismissal.   As the unnamed party
before the EEOC, the forms of advanced notice mentioned above
ensure Ta Chen would suffer no undue prejudice in being named in
the complaint without being named in the EEO proceedings.   While
close inspection of the employee handbook or earning statements
arguably should have put Mr. Byrd on notice of his mistake, Mr.
Byrd alleges that the EEOC office themselves were misinformed as
to the proper identity of his employer.  (ECF No. 15-1, at 1).   If
it turns out this misinformation came from ERI itself, the fourth
factor would also suggest that ERI and Ta Chen satisfy the
substantial identity test.   Pending further disclosure as to Ta
Chen's corporate affiliations, the court declines to dismiss the
claim against Ta Chen in that a similarity of interest between Ta
Chen and ERI is not foreclosed.   Similarly, although individuals
are not typically proper parties in a Title VII suit, *Lissau v.
Southern Food Service, Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998),
Mr. Wolf likewise has a similar relationship to the party named in

14

the EEO complaint to make it appropriate to include him in this court even though he was not initially identified as a respondent.

As this court has noted, "a long line of authority makes plain that individuals may be sued in their official capacity if they are substantially identified with the defendant organization named in the EEOC charge." *Scannell v. Bel Air Police Dep't*, 968 F.Supp. 1059, 1067 (D.Md. 1997) (collecting cases).  And an individual defendant may "be sued if the defendant has constructive knowledge of an EEOC charge and is within the scope of the EEOC investigation which could reasonably grow out of the administrative charges." *Id.* (citing *Int'l Asso. of Machinists and Aerospace Workers v. Terrell*, 644 F.2d 1112, 1123 (5th Cir. 1981)).  The court will not dismiss the Title VII claim against Mr. Wolf "based on 'overly technical concerns.'" *Marshall*, 2019 WL 568676, at *10; see also *Alvarado*, 848 F.2d at 460.

On the other hand, nowhere does Mr. Byrd explain his inclusion of either Mr. Hsieh or Mr. Gall as defendants.  There are no allegations of any interactions between Mr. Byrd and these individuals, let alone what posts, if any, they hold at either ERI or Ta Chen.  Thus, the claims against them will be dismissed.

## 2. **Exhaustion of the Retaliation Claims**

Defendants' second basis for dismissal is that Mr. Byrd failed to exhaust his administrative remedies with respect to his retaliation claims in that they were not raised in his initial

"Charge of Discrimination." (ECF No. 13-1, at 1). Before raising a Title VII claim in federal court, a plaintiff is required to exhaust his or her administrative remedies. *Jones v. Calvert Group, Ltd.*, 551 F.3d at 300.   The crux of their argument is that EEOC review is meant to limit the scope of the right to sue and thus a plaintiff who raises a new theory of recovery in federal court that was not included in the original EEOC complaint has not exhausted his administrative remedies, and those claims are thus barred. (ECF No. 13-1, at 6).

While this proposition is generally true, the Fourth Circuit has squarely rejected this argument as it pertains to added claims of retaliation alleged to occur after the original filing of the EEOC complaint.   In *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992), the court expressly adopted the proposition followed by other circuits that retaliation for the filing of an EEOC complaint naturally grows out of the underlying claims themselves while they were pending before the Commission, and thus "a plaintiff may raise the retaliation claim for the first time in federal court." Moreover, conduct can grow out of an EEOC complaint that has already been resolved by the Commission. *Jones v. Calvert Group, Ltd.* clarified that even though there are "persuasive arguments that the rule we adopted in *Nealon should* have included a pendency requirement, the language of the opinion is clear that the rule we actually adopted in fact included no such requirement." 551 F.3d

at 302 (noting the "practical concerns" of a plaintiff who would "naturally be reluctant to file a separate charge, possibly bringing about further retaliation.").

Here all the retaliation claims may properly relate back to the original EEOC complaint and thus need not be refiled as a new EEOC complaint in order to satisfy the exhaustion requirement. All of Mr. Byrd's retaliation claims happened after and in alleged response to his filing of the original complaint on March 13, 2019. (ECF No. 13-2). There is no question that the complaints that took place before the issuance of "Right to Sue" letter on April 4 (ECF No. 1-3), including the threatened firing and docking of overtime (ECF No. 1-4), were additional charges added while the case was still "pending" before the Commission, in any sense of the word. However, the additional claims of retaliation occurring after the 4th of April may also properly relate back to the original EEOC claim in that Mr. Byrd's original claims of discrimination had yet to be settled or dismissed. Therefore, none of the retaliation claims he puts forth are barred for a failure to exhaust his administrative remedies, and Defendants' motion to dismiss on this basis is denied.

## B.   **Failure to State a Claim**

The third and final basis of Defendants' motion to dismiss is an alleged failure of Plaintiff to provide sufficient facts to

make out his claims of discrimination and retaliation.   (ECF No. 13-1, at 1-2).

### 1.    Discrimination Claims

Plaintiff brings his claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.  Under Title VII, a plaintiff can establish his or her case for workplace discrimination by demonstrating elements which "enable the fact-finder to conclude, in the absence of any further explanation, that it is more likely than not the adverse employment action was the product of discrimination."  *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 57-58 (4th Cir. 1995).  To establish a case of discrimination under Title VII, a plaintiff must show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010). "[W]hile a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, 'factual allegations must be enough to raise a right to relief above the speculative level.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal citations and alterations omitted).  Mr. Byrd has failed to meet this standard on his claims of discrimination.

Mr. Byrd's initial allegations against Mr. Wolf on this front
are as follows: (1) Mr. Wolf provided keys to the building to a
white employee, but not to another, more senior African American
employee, (ECF No. 1, at 6); (2) when Mr. Byrd confronted Mr. Wolf
about the key situation, Mr. Wolf responded "I don't care," and
walked out on Mr. Byrd, (*Id.*); (3) Mr. Wolf accused Mr. Byrd of
having broken a door, despite the fact that several other
employees, who were white, also used the door in question, (ECF
No. 1-4, at 1); (4) Mr. Wolf allowed a white coworker to drive a
"yard" truck despite never having allowed another, African
American coworker to do so, (*id.*); and (5) Mr. Wolf instructed Mr.
Byrd "to spend more time on the restrooms, however he constantly
complains about me staying late[,]" (*id.*).

These incidents of alleged discrimination fail to show that
Mr. Byrd suffered an adverse employment action taken by Defendants.
"An adverse employment action is a discriminatory act that
'adversely affect[s] the terms, conditions, or benefits of the
plaintiff's employment.'" *Holland v. Wash. Homes, Inc.,* 487 F.3d
208, 219 (4th Cir. 2007). "Although conduct short of ultimate
employment decisions can constitute adverse employment action,
there still must be a tangible effect on the terms and conditions
of employment." *Geist v. Gill/Kardash P'ship,* 671 F.Supp.2d 729,
737 n. 6 (D.Md. 2009). In concrete terms that means the employer's
action "constitutes a significant change in employment such as

hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Williams v. Maryland*, No. ELH-13-03445, 2016 WL 3745980 at *14, (D.Md. Mar. 11, 2016) (citing *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011)). The Fourth Circuit has made it clear that reprimands and poor performance reviews alone do not qualify. *Scott v. Lori*, No. ELH-19-2014, 2020 WL 3833129 (D.Md. July 8, 2020) (citing *Dortch v. Cellco P'ship*, 770 F.App'x 643, 647 (4th Cir. 2019)). Actions that merely cause irritation or inconvenience are not adverse employment actions. *Spriggs v. Public Service Com'n of Md.*, 187 F.Supp.2d (D.Md. 2002) (quoting *Van Gruten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001)).

Here, Mr. Byrd fails to explain how these incidents negatively impacted the conditions of his employment. Mr. Byrd expresses indignity over his supervisor giving preferential treatment in various instances to his white colleagues over allegedly more senior or more qualified African American co-workers, and in expecting him to spend more time on his work without staying late. Insulting, unfair and as aggravating as such instances may have been, such alleged injustices had no direct impact on the terms of Mr. Byrd's employment. Moreover, the expressed dissatisfaction of Mr. Byrd's work and need to take overtime is akin to any other type of reprimand that is not an adverse employment action in that

it did not lead to any further discipline or actual termination. *See Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 431 (4th Cir. 2015). The initial claims of discrimination are dismissed in their failure to state a claim for discrimination under Title VII.

**2. Retaliation Claims**

Plaintiff also brings claims of retaliation in violation of Title VII. A plaintiff can prove retaliation by showing: "(1) engagement in a protected activity; (2) adverse employment actions; and (3) a causal link between the protected activity and the employment action." *Coleman v. Maryland Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010). Similarly, "the antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2414 (2006). "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 2415. The Fourth Circuit has explained, however, that an adverse employment action in the retaliatory context: "'is not limited to discriminatory actions that affect the terms and conditions of employment,'" but instead applies to any "'materially adverse' action in response to an employee engaging in a protected activity, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a

charge of discrimination.'" *Williams v. Prince William Cty., Va.*
645 Fed.Appx. 243, 245-46 (4th Cir. 2016) (citing *Burlington*, 548
U.S. 53, 64, 68 (2006)).  The Court has made clear that Title VII's
antiretaliation provisions serve to protect any coworkers who
answer questions about discrimination during an employer's
internal investigation as well as the complainant himself.
*Crawford v. Metro. Gov't of Nashville and Davidson Cty., Tenn.*,
555 U.S. 271, 273 (2009) (labeling the former protection the
"participation clause" and the latter the "opposition clause.")

As an attachment to his initial EEOC complaint, Plaintiff
reports two instances of retaliation, (ECF No. 1-4, at 2), and his
first and second amendments to his complaint add additional claims
of retaliation (ECF Nos. 18, 22).  As to the former, his attachment
is a dated cataloguing of events that occurred that purports to
show a "pattern of (GM) Wolf's Racist Behavior."  (ECF No. 1-4).
On April 2, a couple of weeks after Mr. Byrd first filed his
discrimination case with EEOC, he claims that Mr. Wolf threatened
to fire him for "insubordination" as an apparent pretext for
retaliation, and that on April 3, "Wolfe retaliates by taking
overtime from me," which he credits as "Retaliation for me stating
I would go to the EEOC." (ECF No. 1-4, at 2, 6).  His first
supplement to the initial complaint made on July 15, pursuant to
Fed.R.Civ.P. 15(d), asserts that on June 25, Mr. Wolf asked one of
Mr. Byrd's coworkers "if he knew anything about that case, or if

he was a witness in the case, because anyone involved in the case will be fired." (ECF No. 5-1). In his first amendment to the complaint filed in December, Mr. Bryd subsequently alleges that on December 11, 2019 "unemployment" informed him that he had been terminated from his job due to his refusal to "sign documents on discrimination." (ECF No. 18). As mentioned, he also includes text messages alleged to be from Mr. Wolf. (ECF No. 18-1). After informing Mr. Byrd not to return to work, a text message advises Mr. Byrd that despite any "hesitancy to trust me or anybody given what's been going on," they should both "keep things from getting confrontational there will be no reason to report anything." Mr. Byrd asserts that this is a clear attempt of Ta Chen "trying to take advantage of me not having a Lawyer" and by Mr. Wolf in exploiting his mistrust of the company in order to interfere in his EEOC reporting. (ECF No. 18). His final allegations of retaliation come in his final amendment and include his termination by ERI, as relayed by Mr. Wolf, and their threat to call the police should he attempt to return. (ECF No. 22).

Defendants do not seriously dispute that Mr. Byrd engaged in protected activity. The only questions are whether Plaintiff alleges facts sufficient to demonstrate that the alleged conduct of Defendants Ta Chen and Mr. Wolf constituted adverse employment actions against him, and that there was a causal link between those actions and Mr. Byrd's participation in the EEOC claim process.

There is no question that the docking of pay and eventual termination would qualify as adverse actions, even if judged under the higher standard under discrimination in materially affecting the terms of Mr. Byrd's employment.  All of the allegations as to retaliation constitute adverse actions in that any could have dissuaded a reasonable person from continuing to pursue an EEOC claim if they were in Mr. Byrd's shoes.  While there is undoubtedly a dispute as to the motivation of Mr. Wolf's texts concerning Mr. Byrd's complaints, seen in the light most favorable to Plaintiff, it demonstrates Mr. Wolf and his employer's attempt to interfere directly into a pending claim against them.  Similarly, Mr. Wolf's alleged summoning of Mr. Byrd to his office on April 15, where Mr. Wolf asked him whether the discrimination case was "really about my wages," (ECF No. 1-4, at 2), could also be seen as a form of intimation or interference into the complaint that would tend to dissuade a reasonable person from continuing to pursue it.  While there seemingly is a dispute as to whether calling the police on terminated employees who enter the building is company policy, there is no doubt that his termination also states an adverse action under either standard and that any consequences that stem from it would be similarly dissuading to a complainant.  Perhaps equally concerning are the allegations that Mr. Wolf expressly threatened anyone who cooperated in the EEOC investigation.  This kind of express threat against witnesses in a discrimination

24

complaint go to the core of Title VII's protection for those that participate in its procedures. The threats and concrete forms of retaliation against Mr. Byrd himself go to its core protections of complainants themselves.

According to Mr. Byrd's complaint, all these behaviors were motivated by a wish to retaliate against him for filing a discrimination claim or against others who cooperated in the complaint's investigation and thus he sufficiently alleges a causal connection between the claim and the adverse actions.

## IV. Motions to Supplement

In two separate motions, (ECF Nos. 18, 22), Plaintiff seeks to amend his complaint to add claims of retaliation against Defendant Ta Chen. However, as discussed, these motions are more properly labeled as supplemental pleadings under Fed.R.Civ.P. 15(d) in that they set out events happening after the date of the initial pleading. Fed.R.Civ.P. 15(d). The court is within its powers to allow such supplemental pleadings as long as it occurs "on just terms," and there is no evidence here that any injustice would result from Mr. Byrd's supplementing his complaint with additional events that he could not have included in his original filing. These motions to amend are therefore treated as motions to supplement and hereby granted.

**V.   Motion for Default Judgment**

Plaintiff has also filed a motion for default judgment on December 23, 2019.  (ECF No. 17).  This motion is frivolous; all named Defendants have defended this case, as evidenced by, among other things, their filing of a motion to dismiss within 21 days of their being served.  Plaintiff's motion for default judgment will be denied.

**VI.  Conclusion**

For the foregoing reasons, the motion to dismiss filed by Johnny Hsieh, and Bill Gall (ECF No. 13) and motions to supplement (ECF Nos. 18, 22) will be granted, and the motion for default judgment (ECF No. 17) filed by Plaintiff Vance Byrd and the motion to dismiss filed by Ta Chen and Asher Wolf will be denied.  A separate order will follow.

                    /s/
                    _____
                    DEBORAH K. CHASANOW
                    United States District Judge
